# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.C., *a minor by and through his Guardian Ad Litem, Helen Garter, on behalf of himself and all others similarly situated*,<br><br>                     Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; JESSIE POLINSKY CHILDREN'S CENTER; and SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>                  Defendants. | Case No.:  15cv1868-MMA (NLS)<br><br>**ORDER:**<br><br>**DENYING PLAINTIFF'S MOTION TO STRIKE; AND**<br><br>[Doc. No. 65-1]<br><br>**DENYING MOTION FOR CLASS CERTIFICATION**<br><br>[Doc. No. 60] |

Plaintiff D.C., a minor, filed this putative class action through his guardian ad litem pursuant to 42 U.S.C. § 1983, alleging Defendants violated his and putative class members' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.  *See* Doc. No. 19, First Amended Complaint ("FAC"). Plaintiff filed a motion to certify a class of "[a]ll children who had not yet reached 20 years of age as of August 24, 2015 and who were placed at A.B. and Jessie Polinsky Children's Center and subjected to a physical examination without the presence of their

parent or legal guardian, without the consent of their parent or legal guardian, without an individualized order of the court authorizing their examination, and without exigent circumstances." *See* Doc. Nos. 60, 60-1 ("Pl. Mtn"). Defendant County of San Diego[1] filed its response in opposition [Doc. No. 63 ("Oppo.")], and Plaintiff replied [Doc. No. 65 ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the following reasons, the Court **DENIES** Plaintiff's motion for class certification.

<u>BACKGROUND</u>

Plaintiff contests the constitutionality of medical examinations conducted on children at Polinsky Children's Center ("Polinsky"), "a 24-hour facility for the temporary emergency shelter of children who are separated from their families." *See* FAC ¶ 10. Specifically, Plaintiff alleges that in May 2014, the San Diego County Health and Human Services Agency ("HHSA"), an agency of Defendant San Diego County, determined that Plaintiff "ha[d] been injured while in the custody of his father, and that the injury was suspicious for child abuse." FAC ¶ 21. On August 20, 2014, Plaintiff alleges his mother, Katy Evans, was on a ship pursuant to her duties as a Petty Officer First Class in the United States Navy. FAC ¶ 20. The FAC states that, on that date, a friend of Evans', Wes Bowen, was caring for Plaintiff, who was two years old at the time. FAC ¶¶ 22, 26. While in Bowen's care, Plaintiff purportedly fell and scraped his forehead. FAC ¶ 22. Plaintiff alleges Bowen informed Evans immediately, and Evans contacted Defendant HHSA. *Id.*

On August 21, 2014, Plaintiff alleges his father had a supervised visit with him during which the supervisor did not monitor his father adequately. FAC ¶ 23. Plaintiff contends that on August 22, 2014, he was examined by a child abuse specialist at the

---

[1] Defendant County of San Diego asserts it has been erroneously sued as A.B. and Jessie Polinsky Children's Center and San Diego County Health and Human Services Agency. Only Defendant County of San Diego opposes Plaintiff's motion for class certification. Any further reference to "Defendant" refers to Defendant County of San Diego.

Chadwick Center for Children and Families. FAC ¶ 24. Chadwick Center is a "hospital-based child advocacy and trauma treatment center." *Id.* The specialist allegedly concluded Plaintiff's injuries to his forehead were likely caused by an accident, but found a small bruise behind his right ear which she found suspicious of child abuse because it was similar to the injury Plaintiff's father had inflicted on Plaintiff in May 2014. *Id.* Plaintiff alleges that he was then removed from Evans' control and care. FAC ¶ 25.

On August 22, 2014, Plaintiff alleges he was taken to Polinsky and upon his arrival, he was given a "cursory 'wellness' check by staff" and placed into the general population. *See* FAC ¶ 26. The next morning, Plaintiff contends he was subjected to a physical examination, including an external examination of his genitalia and rectum. FAC ¶¶ 26-27. He alleges that his mother was not notified of the examination, was not present for it, and did not consent to it. FAC ¶ 27. Plaintiff contends that there were no exigent circumstances to justify the examination, nor had the County or its agents obtained a court order or warrant. *Id.*

Based on the examination at Polinsky, Plaintiff alleges a violation of his Fourth Amendment right to be free from unreasonable investigatory searches, and a violation of his Fourteenth Amendment right to family association. FAC ¶¶ 42-55. Plaintiff contends that Defendant County is liable to him and putative class members because Polinsky maintained a policy, custom, and practice of subjecting all children admitted to Polinsky to the same "22-point" physical examination that Plaintiff was subjected to within 24 hours of their admittance.[2] *See* FAC ¶ 30. The FAC states that the County's policy, custom, and practice explicitly prohibited parents from attending the examinations, and that County physicians routinely conducted the examinations without first notifying the children's parents or legal guardians, and without a court order, warrant, or the presence of exigent circumstances. FAC ¶¶ 32-33.

---

[2] As of October 17, 2014, the policy is no longer implemented. Pl. Mtn at 8.

Plaintiff filed the FAC on February 19, 2016, and requests general damages, attorneys' fees, pre- and post-judgment interest, and any other relief the Court deems just and proper.[3]  *See* FAC.

### MOTION TO STRIKE

Plaintiff moves to strike the Declaration of Jennifer L. Davis ("Davis Declaration") in its entirety, which Defendant submitted in support of its Opposition to Plaintiff's Motion for Class Certification.  Doc No. 65-1 at 2.  Plaintiff asserts that the Davis Declaration should be stricken for four reasons: (1) it is untimely; (2) it "conflicts and grossly mischaracterizes Dr. Davis' deposition testimony[;]" (3) it contradicts Defendant's 30(b)(6) designees' testimony, of which Dr. Davis was not designated; and (4) it pertains to merits and not class certification issues.  *Id.*

"In determining whether a class is to be certified, the [c]ourt looks to the parties' allegations and other material 'sufficient to form a reasonable judgment on each requirement.'"  *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 599 (C.D. Cal. 2008) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).  District Courts may consider all material evidence submitted by the parties and need not address the ultimate admissibility of evidence proffered by the parties.  *Gonzalez v. Millard Mall Servs. Inc.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not be admissible at trial."); *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 505 (E.D. Cal. 2014).  As another court in this district has explained:

> Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974) (The class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials.").  At the class

---

[3] The FAC also requests injunctive relief, but since Defendant no longer implements the allegedly unconstitutional policy, this request is moot.

certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008)). Therefore, the Court may consider inadmissible evidence at the class certification stage. *Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." *Alonzo*, 275 F.R.D. at 519.

*Gonzalez*, 281 F.R.D. at 459. On the other hand, the court "should not abandon admissibility standards entirely at the certification stage," *Parkinson*, 258 F.R.D. at 599, because it must still perform a "rigorous analysis" when determining whether a party has satisfied the burden of establishing compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

First, Plaintiff asserts the Davis Declaration should be stricken as untimely. Doc. No. 65-1 at 2. In support, Plaintiff cites to this District's Civil Local Rules, which provide that "exhibits must be attached to the document to which they belong" and untimely responses to motions are not to be filed without the consent of the judicial officer assigned to the case. *Id.* at 2-3 (citing Civ. L.R. 5.1.e; Civ. L.R. 7.1.f.3.b; Civ.L.R. 5.1.f; Civ. L.R. 7.1.e.7). Plaintiff explains that the Davis Declaration was supposed to be filed on or before July 7, 2017, along with Defendant's opposition, but was not filed until July 10, 2017. *Id.* at 3 (citing Doc. No. 56); *see* Doc. No. 64-1 ("Davis Decl."). The Court finds that filing the Davis Declaration three days late is insufficient to strike the entirety of the declaration.

Second, Plaintiff contends topics discussed in the Davis Declaration are irrelevant to class certification and "grossly mischaracterizes Dr. Davis' four-hour deposition testimony." Doc. No. 65-1 at 3. By way of example, Plaintiff explains that Dr. Davis declares that she "learned how to conduct [the physical exams] during medical school," but she testified that she was "trained sort of hands-on" during her deposition. *Id.* at 3 (citing Doc. No. 65, Exhibit A ("Davis Depo.") at 90:20-21; Davis Decl. ¶ 3). When

asked at her deposition about "specific training with regard to the initial examination," Dr. Davis testified that she didn't recall specifics, but shadowed a different doctor for more than a day, and everything she did for two years was training. *Id.* at 3-4 (citing Davis Depo. at 90:25-91:21-22). However, in reviewing the context of these statements, the Court finds that this is not a gross mischaracterization. In the declaration, Dr. Davis explains she learned how to conduct "routine physical exams" during medical school, and that she "was trained sort of hands-on" with respect to Polinsky's policies or practices and initial examination. Davis Depo at 90:4-91:25; Davis Decl. ¶ 3.

Plaintiff also explains that the declaration is a gross mischaracterization because Dr. Davis declares that the atmosphere of the examinations are light, that she "blew bubbles . . . and play[ed] with stuffed animals and toys." Doc. No. 65-1 at 4 (citing Davis Decl. ¶ 4). Plaintiff states that Dr. Davis' deposition testimony characterizes the physical examination as anything but light, specifying that Dr. Davis explained in detail the examination of genitalia. *Id.* (citing Davis Depo. at 81:18-25, 83:22-23). Again, in reviewing the context of these statements, the Court finds that Dr. Davis declared she created a light atmosphere for the examination to make children feel comfortable and to minimize any anxiety. *See* Davis. Decl. ¶ 4. The Court finds that this is not a gross mischaracterization of the examinations, despite that the physical examinations could include examination of a child's genitalia. *See* Davis Depo. at 81:12-25, 83:13-23.

Third, Plaintiff states that the Davis Declaration should be stricken because it contradicts the deposition testimony of Defendant's Persons Most Knowledgeable ("PMK") with respect to "Policies, Procedures, Practices & Customs Re: circumstances under which Medical Procedures, Including Examinations, conducted at Polinsky during class period" and "Policies, Procedures, Practices & Customs re: Manner of conducting Medical Procedures, Including Examination, on children at Polinsky during class period." Doc. No. 65-1 at 4. Specifically, Plaintiff states that PMK witnesses for Defendant testified that the "nursing assessments were the examinations conducted in order to detect contagion" and "to 'make[] sure the child is not sick or injured and does not have lice or

scabies' before the child enters the general population, both of which occur before the doctor's medical examination" and that Dr. Davis' declaration "attempts to proffer the subsequent physical examinations conducted by doctors as providing that function." Doc. No. 65-1 at 5 (citing Doc. Nos. 65, Exhibits B and C, 63-6; Davis Decl. ¶ 5).   The Court finds that this does not contradict PMK witnesses' testimony that the primary purpose of nursing assessments is to detect contagion.  Dr. Davis declares that "[t]he primary purpose of the medical exams at Polinsky is to ensure the health of the child. . . . The exams are also helpful to get a medical "baseline" for a child to document his or her health and medical condition in case he or she develops illness or an injury.  Also, doctors examine children to ensure they do not have any contagious diseases . . . ."  Davis Decl. ¶ 5.  Dr. Davis does not contradict testimony that the primary purpose of nursing assessments is to detect contagion; rather, Dr. Davis merely declares that doctors also check for contagion.

Fourth, Plaintiff moves the Court to strike the Davis Declaration because it "pertains to merits and not class certification."  Doc. No. 65-1 6.  However, "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. . . .  [A] district court *must* consider the merits if they overlap with the Rule 23(a) requirements."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 564 U.S. at 350-52; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)).  With that said, the Court only examines the merits to the extent necessary to determine whether to certify the putative class and declines to strike the Davis Declaration on this ground.  Based on the foregoing, the Court **DENIES** Plaintiff's motion to strike the Davis Declaration.

### MOTION FOR CLASS CERTIFICATION

Plaintiff moves the Court for an order certifying this case as a class action for his claims against Defendant arising out of the County's "institution and enforcement of a policy, practice, and custom pursuant to which children held at Polinsky were subjected to head-to-toe investigatory physical examinations" that were conducted without parental

consent (or consent of a legal guardian), without any order or warrant for such examinations, and without exigent circumstances. Pl. Mtn at 8. Defendant opposes class certification, contending that Plaintiff has not met the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See generally,* Oppo.

## 1. *Legal Standard*

Rule 23 governs the certification of a class. Fed. R. Civ. P. 23. "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis*, 657 F.3d at 979-80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)). Rule 23(a) requires a party seeking class certification to establish the following four elements:

> (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

*Id.* at 980 (citing Fed. R. Civ. P. 23(a)). The United States Supreme Court has made clear that "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*

At the certification stage, district courts must "engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis*, 657 F.3d at 980. "In many cases, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. . . ." *Id.* (internal citation and quotation omitted). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to

certify a class.  More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements."  *Id.* at 981 (emphasis in original).

Once the prerequisites of Rule 23(a) are met, the Court must then determine whether the class action is maintainable under Rule 23(b).  "Under Rule 23(b)(3), a class may be certified if the district court 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)).  A central concern of the Rule 23(b)(3) predominance test is whether "adjudication of common issues will help achieve judicial economy."  *Zinser*, 253 F.3d at 1189.  "The party seeking certification bears the burden of demonstrating that he has met the requirements of Rule 23(b)."  *Vinole*, 571 F.3d at 944 n.9.

## 2.    *Factual Background*

Polinsky opened in 1994 and is the County's emergency shelter for children who have allegedly been physically, sexually, and/or emotionally abused, medically or physically neglected, and/or temporarily have no parent, guardian, or adult caretaker.  Pl. Mtn at 11; Doc. No. 60-2, Declaration of Rachele R. Rickert in Support of Plaintiff's Motion for Class Certification ("Rickert Decl."), Exhibits A ¶ 1.1, B ("Graff Depo.") at 18:4-5, C ("PMK Hurd Depo.") at 31:20-23.  That year, the County issued a Request for Proposal ("RFP") to provide physical health services to children at Polinsky.  Rickert Decl., Exhibit D.  The County, Department of Health Services ("DHS"), UCSD Medical Center ("UCSD"), and Children's Hospital and Health Center ("Rady")[4] responded to the

---

[4] "Rady" is a pediatric medical center known as "Rady Children's Hospital-San Diego."  Pl. Mtn at 11 n.2.  Prior to 2006, Rady was named "Children's Hospital and Health Center."  *Id.*

RFP and were awarded the contract. Pl. Mtn at 11; Rickert Decl., Exhibit F at 1. The County issued a new RFP every five years and each time Rady responded it was awarded the contract either with other entities, or beginning in the late 1990s, as the sole contractor. Pl. Mtn at 11.

The County Contract[5] governed the administration of Polinsky's medical services and its pertinent provisions did not change during the Class Period. Rickert Decl., Exhibit O ("Hoene Depo.") at 75:7-76:1; Graff Depo. at 46:16-47:2. Polinsky was required to provide a "[p]re-admission screening, done jointly by County intake social workers and [Rady] medical staff, of all children brought to [Polinsky]" and within 24 to 72 hours, Polinsky was to provide a "health assessment" of the minor's admission to Polinsky. Pl. Mtn at 12; County Contract ¶ 3.1.2. These pre-admission screenings were often referred to as "nursing assessments," and the "health assessments" were commonly referred to as a physician's "medical exam." Pl. Mtn at 12, Rickert Decl., Exhibit P ("PMK Cleland Depo.") at 24:11 (referring to the pre-admission screening as a nursing assessment); PMK Wilson Depo. at 46:11-16. The health assessment consisted of a physician's medical examination and the physician's documentation of any injuries discovered. PMK Wilson Depo. at 48:14-49:16. The County relied on general juvenile court orders for authorization to conduct the medical examinations. Pl. Mtn at 13; PMK Cleland Depo. at 37:11-18; Rickert Decl, Exhibit C ("PMK Hurd Depo.") at 112:1-6, Exhibit R ("PMK Rincon Depo.") at 170:2-20, Exhibit S at 2098-99. The medical examinations, which follow the nursing assessments, were required from Polinsky's opening in 1994 through at least the end of the Class Period.

Plaintiff alleges the medical examinations were investigatory in nature because they looked for evidence of abuse and neglect. Pl. Mtn at 16; Graff Depo. at 103:13-

---

[5] "County Contract" refers to "various iterations of the contract, including its amendments, Statements of Work (attached as 'Exhibit A' [to the Rickert Decl.]), and [RFP] Responses incorporated therein." Pl. Mtn at 11 n.3 (citing Rickert Decl., Exhibits A, D, F, H, I, J, K, L, M ("County Contract")).

104:20. Photos were taken if abuse was discovered. Rickert Decl., Ex. N. at 1920. These examinations included examination of the child's genitalia. Pl. Mtn at 15; Rickert Decl., Exhibit U ("Davis Depo.") at 81:12-82:14, Exhibit D at 8. For girls the doctor "would look at the general pubic area, have the girls drop their legs into a frog-like position and separate the labia to look at the hymen," and for boys the doctor "would conduct a visual inspection to see what the genitalia looked like and then palpate the genitalia to ascertain whether there were two testicles and whether there were any masses or abnormalities." Pl. Mtn at 15; Graff Depo. at 41:5-11, 51:3-22. For boys going through puberty, the doctor "would conduct a standing examination and assess for a hernia by placing her finger along the inguinal canal and then have the child turn his head and cough." Pl. Mtn at 15; Graff Depo. at 51:21-52:2. In addition, the doctor would examine the child's rectum and would "manually spread the buttocks to examine the anal area." Pl. Mtn at 15 (citing Graff Depo. at 74:6-75:23). Parents were not allowed into the examination rooms and parental consent was not sought for the examinations. Pl. Mtn at 16; Graff Depo. at 57:13-58:8, 58:21-60:2.

Plaintiff alleges that during the Class Period tens of thousands of children were physically examined and that the County did not permit parents to enter the medical clinic or be present at the examination, did not obtain the consent of children's parents or legal guardians prior to the physician's examination, and did not obtain a court order or warrant prior to the examination and after notice to the parents and an opportunity to be heard. Pl. Mtn at 17. Plaintiff further alleges that exigent circumstances did not exist prior to these examinations.[6] *Id.*

On August 22, 2014, nurse Calyuya conducted a nursing assessment on Plaintiff D.C. after D.C. had been seen by a doctor at the Chadwick Center. *Id.* (citing Rickert Decl., Exhibits V at CSD 0006, 0018, 0025, 0034, 0036, 0039, U at 104:8-13, Q at 22:2-

---

[6] Hereinafter, the Court will refer to consent of a parent or legal guardian, exigent circumstances, or order without providing notice and an opportunity to be heard as "appropriate consent or authorization."

9).  The following day, Dr. Davis conducted a medical examination of D.C., including examination of D.C.'s external genitalia.  *Id.*; Davis Depo. at 100:7-101:1, 116:16-117:3; Rickert Decl., Exhibit V at CSD 0037.

**3.    *Class Definition***

As a preliminary matter, the class that Plaintiff seeks to certify is different from the class alleged in the FAC.  In the FAC, Plaintiff sought to represent a class of:

> all persons who, as of the date of the filing of the original Complaint in this action, were under 20 years of age, who were detained at Polinsky as minors, and who were subjected to invasive and/or intrusive physical examinations at Polinsky without the consent or presence of their parent(s) or legal guardian(s), without any order or warrant for such examinations, and without exigent circumstances during the period commencing 20 years prior to the day before the date of filing of Plaintiff's original Complaint and continuing until the date on which the relief sought herein is granted or, alternatively, through the date the County's policy, custom and practice of conducting such examinations without the consent or presence of a parent or legal guardian and without any order or warrant ceased.

FAC ¶ 12.  However, the motion for class certification defines the class as:

> all children who had not yet reached 20 years of age as of August 24, 2015 and who were placed at A.B. and Jessie Polinsky Children's Center and subjected to a physical examination without the presence of their parent or legal guardian, without the consent of their parent or legal guardian, without an individualized order of the court authorizing their examination and without exigent circumstances.

Doc. No. 60 at 2.

It is the Court's preference that a party seeking to modify the class definition in a motion for class certification first seek leave to amend the class allegations in the complaint.  "The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009).  "The primary exception to this principle is when a plaintiff proposes a new class definition that is *narrower* than the class definition originally proposed, and does not involve a new claim for relief." *Bee, Denning, Inc. v.*

*Capital Alliance Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015) (emphasis in original) (citing *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (permitting the plaintiff to propose a new class definition in his motion for class certification when the new definition was "simply a narrow version of the class definition presented in the [amended complaint]")).

Additionally, after a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party. *See* Fed. R. Civ. P. 15(a). Rule 15 provides that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may decline to grant leave to amend "if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Prejudice to the opposing party is the most important factor and carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original). Furthermore, after a scheduling order has been issued it may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Pursuant to the Court's scheduling order, any motions to amend the pleadings were due by May 16, 2016. Doc. No. 28. As a result, Plaintiff must show good cause and must obtain leave of the court to amend the class definition. *See* Fed. R. Civ. P. 16(b)(4).

Defendant contends that this definition impermissibly expands the proposed class in two ways. Oppo. at 13. First, the new definition deletes the requirement that the examination be "invasive and/or intrusive" and instead expands the class to all children who were "subjected to a physical examination . . . ." *Id.* (citing Doc. No. 60 at 2). Second, the new definition specifies that minors will be included in the class if there was

no "individualized order of the court authorizing their examination," whereas the FAC excluded minors from the class if there was "any order or warrant." *Id.* Plaintiff asserts that he has always alleged that all of the medical examinations were included, not just invasive and/or intrusive examinations, and has always alleged that none of the general orders authorized the examinations and adding the word "individualized" would therefore not change the definition. Reply at 18.

The FAC frequently refers to the allegedly unconstitutional physical examinations as "invasive and/or intrusive" and does not allege that the general orders were inapplicable. FAC ¶¶ 2, 12, 17, 29, 33. However, the term "invasive and/or intrusive" is not defined anywhere in the FAC and could refer to the examinations as a whole or only specific procedures of the examinations. The FAC alleges issues with procedures during the physical examinations, including by way of example, examination of a child's genitalia and anus. *See* FAC. The Court finds that the FAC was not attempting to qualify specific procedures as "invasive and/or intrusive," but instead alleges that the entire examination is invasive and/or intrusive. Thus, omitting this language from the class definition would not unduly prejudice Defendant as the FAC alleged constitutional violations as applied to the medical examinations as a whole. Accordingly, the Court finds good cause to amend the class definition and omit the language "invasive and/or intrusive."

With respect to the "any order" language, the Court addressed authorization for conducting medical examinations pursuant to a general order at the motion to dismiss stage. Doc. No. 18 at 12. The Court found that such a court order does not override the due process requirements allegedly violated by Defendant. *Id.* Changing the phrase to "individualized order" would more specifically address Plaintiff's allegations. Thus, Plaintiff has demonstrated good cause to include the "individualized order" language in the class definition and Defendant is not prejudiced because Defendant knew since at least the motion to dismiss stage that Plaintiff challenged the constitutionality of these examinations even with the general orders in place. Doc. No. 18 at 12. Further, not

amending the definition to include Plaintiff's "individualized order" language would exclude all children examined prior to the issuance of the general order in 1998, including Plaintiff himself. *See* Oppo. at 10 (explaining that the general order was first issued in 1998). As a result, the Court finds good cause to amend the class definition and add "individualized order." Thus, the Court analyzes class certification based on the class definition provided in Plaintiff's motion for class certification.

### 4. *Certification Under Rule 23*

Plaintiff contends that Defendant's Answer admits that Plaintiff is an adequate class representative (FAC ¶ 15), that the class action is superior to other available methods for adjudication of the controversy (FAC ¶ 16), and that there are questions of law and fact in common to class members which predominate over any questions affecting any individual members (FAC ¶ 17). Pl. Mtn at 23. Defendant asserts that it declined to respond to class certification allegations in the FAC because they are legal theories and legal conclusions. Oppo. at 11.

Federal Rule of Civil Procedure 8(b) requires that "[i]n responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1). Rule 8(b)(6) provides that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided." Fed. R. Civ. P. 8(b)(6).

Defendant asserts that paragraphs 15, 16, and 17 of the FAC "require no response from Defendant" because they are "legal conclusions." Doc. No. 23 ("Answer") at ¶ 1. Defendant denied the factual allegations set forth in paragraphs 8, 10, 13, 14, and 20-28 of the FAC. *Id.* at ¶ 4. The alleged legal conclusions with respect to adequacy of representation, numerosity, and commonality are based in part on the factual allegations Defendant denied. Accordingly, the Court will not deem paragraphs 15, 16, and 17 admitted. *See Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1175 (N.D.

Cal. 2010) (holding that "[w]hile [defendant] has refused to either admit or deny the ultimate legal conclusions alleged by [plaintiff], [defendant] has denied all of the factual allegations on which those legal conclusions rest"); *see also Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2971046, at *3 (N.D. Cal. July 21, 2011) (declining to deem plaintiff's allegations admitted because defendant admitted factual allegations supporting legal conclusions that defendant did not respond to).

Even if Defendant has admitted or conceded some of the Rule 23(a) requirements, the Court must still address each certification factor. Federal courts have an independent obligation to determine whether a class action may be maintained. Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."); *Gibson v. Local 40, Supercargoes & Checkers of Int'l Longshoremen's & Warehousemen's Union*, 543 F.2d 1259, 1263 n.2 (9th Cir. 1976) (when the complaint makes clear plaintiffs seek a class action, the court is obliged to rule on class certification). Thus, the Court analyzes each of the class certification requirements regardless of whether Defendant admitted or did not oppose particular requirements.

## A.    *Rule 23(a)(1)—Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). "The Supreme Court has held [that a class of] fifteen is too small" to satisfy the numerosity requirement. *Harik v. California Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003) (citing *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)). Although there is no absolute threshold, courts generally find numerosity satisfied when the class includes at least forty members. *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (stating that

"courts generally find that the numerosity factor is satisfied if the class comprises of 40 or more members").

Numerical threshold aside, the central question underlying the numerosity requirement "is whether Plaintiff[] ha[s] sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680-81 (S.D. Cal. 1999). "Plaintiff[] must show some evidence of or reasonably estimate the number of class members." *Id.* at 681. "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co.*, 446 U.S. at 330.

Plaintiff argues that joinder is impracticable because "during the nearly 20-year Class Period, tens of thousands of children were admitted to Polinsky" and that nearly all of the children admitted were subjected to a physical examination. Pl. Mtn at 24-25. Defendant does not oppose Plaintiff's numerosity argument. *See* Oppo.; *see also* Reply at 9. The Court finds that numerosity is met. Plaintiff has presented evidence showing that between August 24, 1995 and August 24, 2015, approximately 37,705 children were admitted to Polinsky. Rickert Decl., Exhibit Y at 3; Exhibit D at 8; *see* Davis Depo. at 150:11-19. Plaintiff has also presented evidence that it is Defendant's policy and practice to conduct a physical examination upon each child within 24 to 72 hours of admittance to Polinsky. Pl. Mtn at 12; County Contract ¶ 3.1.2. Accordingly, Plaintiff satisfies the numerosity requirement.

## B.    *Rule 23(a)(2)—Commonality*

Rule 23(a)(2) requires a plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement will be met only if the plaintiff shows that "the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted). For purposes of commonality, "[e]ven a single [common] question will do." *Dukes*, 564 U.S. at 359 (internal citation omitted).

However, "[a]ny competently crafted class complaint literally raises common "questions.'" *Id.* at 349 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)). Thus, the real test is whether a class action can "generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (emphasis in original). As the Supreme Court has recognized:

> What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* In other words, commonality exists where the "determination of [a common contention's] truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164-65 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 2835 (2015) (internal quotation and alteration omitted). To demonstrate that class claims would produce a common answer, the party seeking certification must present "significant proof" that the employer operated under a "general policy" or practice. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (citing *Dukes*, 564 U.S. at 353). "If there is no evidence that the entire class was subject to the same allegedly" unlawful policy or practice, then "there is no question common to the class." *Ellis*, 657 F.3d at 983.

Plaintiff argues that his claims "clearly hinge" on five common questions of law and fact:

> (1) whether the County instituted and enforced a policy, practice, and custom pursuant to which children detained at Polinsky were subjected to physical examinations; (2) whether those physical examinations were performed without the consent or presence of their parent(s) or legal guardian(s); (3) whether those physical examinations were performed without [individualized] court orders obtained after notice to the parents and an opportunity to be heard; (4) whether those physical examinations were performed without exigent circumstances; and (5) whether the physical examinations violated Plaintiff's and Class members' civil rights which

18

resulted in the common deprivation of human dignity and constitutional rights.

Pl. Mtn at 26. Defendant counters that individual questions "will overwhelm any common questions of law and fact," making a class action unmanageable. Oppo. at 20. For example, Defendant explains that "[i]ndividualized inquiries necessary to establish that each child's medical examination was (1) invasive or intrusive, (2) potentially traumatic, and (3) done without consent will overwhelm any common issues." *Id.* at 21. Specifically, Defendant contends that "invasive or intrusive" could include many different aspects of the examination, including a blood test, or examination of a child's genitalia or rectum. *Id.* at 23.

Plaintiff has cited to the existence of objective medical records suggesting that thousands of children were examined by a physician during the class period. Rickert Decl., PMK Cleland Depo. at 99:19-100:1, 114:11-115:15. Specifically, Plaintiff explained that Defendant keeps medical records, including a chart where the physician would mark which of the 22 "points" on a child's body were examined, for each child that was placed at Polinsky for up to 28 years. *Id.* In addition, Plaintiff has provided evidence supporting the assertion that the appropriate consent or authorization was not obtained and that the policy and practice was to rely on generalized court orders to authorize these examinations. Pl. Mtn at 26; Ricker Decl., Exhibits EE at 1 n.1, T ¶¶ 4-5; Cleland Depo. at 37:11-22. Furthermore, Plaintiff has provided evidence that children were taken to a hospital and not treated at Polinsky if exigent circumstances existed. Cleland Depo. at 38:19-39:6; Graff Depo. at 87:23-88:9; Rickert Decl., Exhibits FF at 000743, N at 001920; County Contract ¶ 3.1.2. The objective data can be evaluated to resolve common issues to the class and provide a thread of common facts that is demanded by the commonality requirement. *See Malta v. Fed. Home Loan Mrtg. Corp.*, No. 10-cv-1290-BEN (NLS), 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) (finding commonality where "the proposed class members' claims stem from the same factual circumstance").

In addition, the Ninth Circuit has held that the commonality requirement is construed permissively and is less rigorous than the requirements under Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Thus, the fact that some class members' may have experienced differing procedures during their examinations does not destroy commonality. *See Moyle v. County of Contra Costa*, No. C-05-02324 JCS, 2007 WL 4287315, at *18 (N.D. Cal. Dec. 5, 2007) (finding that Plaintiffs established commonality for class claims of violations of the Fourth and Fourteenth Amendments for Defendants' policy of strip searching and conducting visual body cavity searches of children during intake at the County of Contra Costa's Juvenile Hall). Furthermore, whether the medical examinations resulted in violations of the Fourth and Fourteenth Amendments involve common questions of law that will drive resolution of the class-wide claims. *See Reyes v. Educ. Credit Mgmt. Corp.*, No. 15-cv-00628-BAS-AGS, 2017 U.S. Dist. LEXIS 153428, at *33 (S.D. Cal. Sept. 20, 2017). As such, Plaintiff has established commonality.

## C.    *Rule 23(a)(3)—Typicality*

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This is a "permissive" standard which requires only that the claims of the class representative be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (citation omitted); *see also Hanon*, 976 F.2d at 508 ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"). "The

purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Plaintiff contends that he "alleges the exact same civil rights claims as all other members of the Class." Pl. Mtn at 28. Specifically, he alleges that after admittance to Polinsky, a physician—Dr. Davis—conducted a medical examination on him without the appropriate consent or authorization. *Id.* Defendant asserts that Plaintiff's claims are atypical because he was two years old when examined by Dr. Davis, and therefore cannot show he suffered emotional distress because he was too young to remember the incident. Oppo. at 15. Plaintiff replies that he is seeking presumed damages for constitutional deprivations, which negates Defendant's argument. Reply at 10.

Courts have found typicality where a named plaintiff is not entitled to actual damages, but seeks to represent a class of people who may be entitled to actual damages. *Irwin v. Mascott*, 96 F. Supp. 2d 968, 977 (N.D. Cal. 1999) ("So long as the injuries of the named plaintiffs and the class members arose out of the same conduct, the named plaintiffs may properly represent the class."); *Wyatt v. Creditcare, Inc.*, No. 04-03681 JF, 2005 WL 2780684, at *4 (N.D. Cal. Oct. 25, 2005) ("Although it appears that [the named plaintiff] . . . is not entitled to actual damages, the fact that other prospective class members may be entitled to actual damages does not render [the named plaintiff's] legal claims atypical of those of the class."). As such, Plaintiff's potential inability to pursue emotional distress damages does not render his legal claims atypical of the prospective class members' claims who may be entitled to actual damages. *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 679 (N.D. Cal. 2011). Therefore, the Court finds that Plaintiff has met the 23(a)(3) typicality requirement. Additionally, the Court finds Defendant's damages argument more applicable to determining whether Plaintiff has met Federal Rule of Civil Procedure 23(b)(3).

### D.     Rule 23(a)(4)—Adequacy of Representation

Rule 23(a)(4), the final requirement of Rule 23(a), is that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P.

23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). This requirement satisfies due process for absent class members who are bound by entry of judgment. *Hanlon*, 150 F.3d at 1020.

Plaintiff asserts that his interests and the interests of the class are entirely aligned and that there is no evidence of conflict or antagonism between Plaintiff, his attorneys, or the class. Pl. Mtn at 29. Further, Plaintiff contends that he and his Guardian Ad Litem retained legal counsel with "considerable experience" in litigating class actions, including civil rights claims. *Id.* Accordingly, Plaintiff argues he is an adequate class representative. *Id.*

Defendant counters that Plaintiff is not an adequate class representative because he has waived a claim for special damages and instead seeks presumed damages. Oppo. at 16. According to Defendant, this conflicts with class members who may be entitled to larger special damages awards than the presumed damages sought by Plaintiff. *Id.* "Not every conflict . . . will prevent class certification—the conflict must be 'fundamental' to violate Rule 23(a)(4)." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *see also Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 558 (C.D. Cal. 2011). "A conflict is 'fundamental' when it goes to the specific issues in controversy . . . or where . . . some plaintiffs claim to have been harmed by the same conduct that benefitted other members of the class, preventing the named representatives from 'vigorously prosecut[ing] the interests of the class through qualified counsel.'" *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) (quoting *Valley Drug v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (internal citation omitted)); *see also Brown*, 285 F.R.D. at 558. "[C]ourts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is

apparent, imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909. As noted previously, the Court finds Defendant's damages arguments more applicable to analyzing whether to certify the class pursuant to Federal Rule of Civil Procedure 23(b)(3).

Defendant also argues that Plaintiff's Guardian Ad Litem has "abdicated the management of this case to counsel." Oppo. at 16. A plaintiff is not an adequate representative of a class when "it appears that [the plaintiff has] abdicated any role in the case beyond that of furnishing their name[] as plaintiff[]." *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 7 (E.D. Ill. 1977). "Several district courts thus have properly denied class certification when the class representative[] had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). However, to satisfy the adequacy requirement the class representative need only possess a "minimal degree of knowledge regarding the class action." *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *9 (N.D. Cal. Feb. 5, 2009).

Guardian Ad Litem Helen Garter's deposition testimony satisfies the minimal degree of knowledge required to meet adequacy of representation. *See* Doc. Nos. 63-5, 65-2, Deposition of Helen Garter ("Garter Depo.").[7] While Ms. Garter indicated that she did not understand she would be making decisions in this litigation as a class representative or what her duties to other class members would be, she stated that she would review any duties and discuss her obligations with counsel. *Id.* at 13:12-15, 33:2-12, 40:20-41:5. She also explained that she understood that a class action "[i]n layman's terms" means "representing a number of people party to a claim," and that she seeks to

---

[7] Plaintiff and Defendant both attach excerpts of Ms. Garter's deposition testimony. The Court refers to both excerpts as the "Garter Depo." and cites to the deposition page number (not the automated CM/ECF pagination).

represent "[a]ll children who were subjected to these [medical] examinations at the Polinsky Center." *Id.* at 30:1-14. Ms. Garter testified that she is "representing [all of the class members] the same ways as [she is] representing [her] grandson." *Id.* at 32:20-23. Although Ms. Garter did not recognize the FAC at her deposition and testified that she had no understanding of what claims are being asserted or who the named defendants are, she did understand that the lawsuit is about "examinations that [D.C.] was given without his mother present" at Polinsky." *See id.* at 13:16-20, 18:10-11, 23:1-8, 36:7-9. When asked whether she did anything to confirm the factual allegations in the FAC, Ms. Garter testified that she "left that to [her] counsel." *Id.* at 34:22-35:1.

Though it is somewhat problematic that Ms. Garter's deposition testimony reveals that she has a rudimentary understanding of the facts of the case, the Court finds that Ms. Garter is an adequate representative. *See Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 249 (C.D. Cal. 2006). Defendant has not demonstrated such a lack of knowledge or understanding about the case that Ms. Garter is alarmingly unfamiliar and blindly relies on class counsel. *See Koenig v. Benson*, 117 F.R.D. 330, 336 (E.D.N.Y. 1987); *Kirkpatrick*, 827 F.2d at 727 (stating that "a potential class is entitled to 'more than blind reliance upon even competent counsel by interested and inexperienced representatives'"); *Jimenez*, 238 F.R.D. at 249 (noting that a proposed representative's credibility and blind reliance on attorneys could make the representative inadequate); *In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. 113, 118-19 (D. Colo. 1986) (stating that the proposed representative is adequate even though he was "not very knowledgeable as to the status of his lawsuit" and did "not appear to be exercising independent judgment in this case" even though "the class is entitled to more than blind reliance on counsel"). Ms. Garter has demonstrated a basic understanding of the case—that medical examinations of children at Polinsky were conducted without the appropriate consent or authorization. Accordingly, Ms. Garter has the minimal knowledge required to adequately represent the class. *See Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421, 427-28 (E.D. La. 1997) (finding that a plaintiff is an adequate representative if he or she has a "basic

understanding about the nature of the suit”); *Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660, 668 (N.D. Ala. 1999) (finding the proposed class representative adequate because his “assessment of the alleged wrongful conduct is essentially correct” and that “lack of specific knowledge about the claims generally is not grounds for denying certification where the representative’s counsel is capable of handling the litigation”); *In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. at 119 (finding the proposed representative adequate even though “he did not know the specific misrepresentations alleged in the complaint” because “he underst[ood] the underlying legal basis for this action”).

Accordingly, Plaintiff and his Guardian Ad Litem have met their burden to demonstrate adequacy of representation.  First, Plaintiff’s interest—to receive compensation for alleged Constitutional violations—is aligned with the interests of the putative class as a whole.  Second, nothing suggests that Plaintiff or his counsel have any fundamental conflicts of interest with other class members such that class certification raises due process concerns.  Third, nothing indicates that named Plaintiff and his counsel lack the incentive to prosecute this action vigorously.  Finally, Defendant does not dispute the competency of Plaintiff’s counsel, and this Court finds that Plaintiff’s counsel have ample experience and expertise to adequately represent the class.  *See* Oppo.; *see also Knutson v. Schwan’s Home Serv., Inc.*, No. 12-cv-964-GPC-DHB, 2013 WL 4774763, at *8 (S.D. Cal. Sept. 5, 2013)(finding the plaintiff’s counsel adequate where the defendant did not challenge plaintiff’s representation that their counsel is competent and experienced).  Plaintiff’s counsel have provided evidence of their experience litigating class actions to demonstrate their competency.  *See* Rickert Decl., Exhibit GG.

## 5.    *Certification Under Rule 23(b)(3)*

Rule 23(b)(3) requires that “the questions of law or fact common to class members *predominate* over any questions affecting only individual members.”  Fed. R. Civ. P. 23(b)(3) (emphasis added).  “A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation.”  *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (internal citation and quotation

marks omitted). "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang*, 737 F.3d at 545 (quoting *Hanlon*, 150 F.3d at 1022). "'[T]here is clear justification for handling the dispute on a representative rather than an individual basis' if 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Mazza v. Am. Honda Motor. Co. Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1022). The Supreme Court has recognized that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Defendant first argues that individual issues predominate at the liability stage because determination of whether the examinations were invasive or intrusive and potentially traumatic, and whether there was proper consent or authorization requires an individualized assessment of the facts for each potential class member. Oppo. at 21-29. Plaintiff counters that these issues define the class, and as a result will not predominate the liability stage. Reply at 13-15. For example, children whose parent(s) or legal guardian(s) did not consent and where there was no individualized court order authorizing the examination would be excluded from the class by definition. *Id.* Further, Plaintiff explains that the child's medical chart would reflect whether the County obtained valid parental consent or consent from a legal guardian. Reply at 15 (citing Rickert Decl., Exhibit S at DC v. County of SD 002097-02099). The Court further notes that the class definition does not require a determination of whether each examination was "invasive or intrusive." Determining whether Defendant's policy of conducting medical examinations without appropriate consent or authorization violates the Fourth and Fourteenth Amendments of the United States Constitution is an issue common to all putative class members and can be resolved for all members of the class in a single adjudication. *See Mazza*, 666 F.3d at 589.

Defendant next argues that the question of damages requires individualized determinations inappropriate for class treatment. Oppo. at 29-39. Plaintiff contends he is seeking general or presumed damages[8] for the constitutional violations inflicted upon Plaintiff's and class members' human dignity, including emotional distress. Pl. Mtn at 32-33; FAC ¶ 17(j). Plaintiff asserts that these presumed damages are not individualized because if the medical examinations without the appropriate consent or authorization violated the Fourth and Fourteenth Amendments, Plaintiff and the class will have proven an actual injury and can recover compensatory damages inflicted upon their human dignity. *Id.* at 33.

With respect to presumed damages, the Ninth Circuit has not decided whether they are appropriate in § 1983 cases. *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) (finding presumed damages inapplicable because the plaintiff "ably presented evidence and argued to the jury she was entitled to compensatory damages for emotional and economic harm"); *Amador v. Baca*, 299 F.R.D. 618, 632 (C.D. Cal. 2014) (stating that the Ninth Circuit has not "decided whether presumed damages are appropriate in § 1983 cases"). Presumed damages do not flow from every constitutional violation. *See Carey v. Piphus*, 435 U.S. 247, 263 (1978). They are appropriate when there is a great likelihood of injury coupled with great difficulty in proving damages. *See id.* at 264. "In those circumstances, presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 311 (1986). In other words, "[p]resumed damages are a *substitute* for ordinary compensatory damages, not a *supplement* for an award that fully compensates the alleged injury." *Id.* at 310 (emphasis in original). In sum, "whatever the constitutional basis for § 1983 liability, such damages

---

[8] The pleadings suggest that by "general damages" Plaintiff means the injury to human dignity that is presumed when a medical examination is conducted on a child without the appropriate consent or authorization. *See* FAC ¶ 17(j). Accordingly, this Court will use the term "presumed damages."

must always be designed to *compensate injuries* caused by the [constitutional] deprivation." *Id.* at 309. When it is difficult to precisely quantify the damages, presumed damages may be applicable, but "[t]he award must focus on the real injury sustained and not on either the abstract value of the constitutional right at issue . . . or the importance of the right in our system of government." *Piver v. Pender Cnty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987).

Here, Plaintiff alleges that the constitutional deprivations injured Plaintiff's and class members' human dignity or caused emotional distress. FAC ¶ 17(j). It is unlikely that presumed damages are applicable here because emotional distress damages could be determined. *Norwood v. Bain*, 143 F.3d 843, 856 (4th Cir. 1998) (No need for presumed damages in class action where "[t]here was no inherent difficulty in proving any economic or physical or emotional harm that may have resulted [from the illegal search of the plaintiffs' personal property] or in quantifying the amount of that harm under established damages law."); *Baumgardner v. Secretary, United States Dep't of Hous. & Urban Dev.*, 960 F.2d 572, 581-83 (6th Cir. 1992) (no need to presume damages where plaintiff presented evidence of emotional distress); *Lewis v. Harrison Sch. Dist.*, 805 F.2d 310, 317 (8th Cir. 1986) ("Any door left open [for presumed damages awards] by [*Starucha*] is not for plaintiffs like Lewis, whose damages are readily measurable); *Amador*, 299 F.R.D. at 634 (presumed damages unavailable in strip search cases because plaintiffs can establish emotional distress). The principal issue, then, would be to evaluate the emotional damages resulting from the allegedly unconstitutional medical examinations on a class wide basis.

"[T]he black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate." 2 William B. Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed. 2012). This is particularly true "where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.

639 (2008).  The Ninth Circuit has certified a class of stock purchasers despite the issue of individualized damages because "the amount of price inflation [caused by the defendants' misrepresentations] during the period can be charted and the process of computing individual damages will be virtually a mechanical task."  *Blackie*, 524 F.2d at 905.  Thereafter, the Ninth Circuit typically certified classes despite individualized damage assessments where damages could be calculated using a mechanical or formulaic process.  *See, e.g.*, *Abdullah v. U.S. Security Assoc., Inc.*, 731 F.3d 952, 966-67 (9th Cir. 2013) (determining individualized damage assessments did not predominate because the defendant's time records would not make it overly burdensome to calculate damages); *Arthur Young & Co. v. U.S. Dist. Court*, 549 F.2d 686, 696 (9th Cir. 1977) (certifying a class where individualized damage assessments would require determining the amount invested and the interest bought by each claimant).  However, while it is often true that damages calculations cannot alone defeat class certification, that principle may not be applicable where the emotional distress damages to every class member will depend on the individual incidents.  *See Berndt v. Cal. Dep't of Corr.*, No. C 03-3174 PJH, 2012 WL 950625, at *13 (N.D. Cal. Mar. 20, 2012); *see also Doyle v. Chrysler Grp., LLC*, 663 Fed. App'x 576, 579 (9th Cir. 2016) ("Although Doyle is correct that our court has emphasized that the need for individualized findings as to the amount of damages does not defeat class certification, it has applied this understanding in cases where there existed a common methodology for calculating damages") (internal quotation marks and citations omitted).

While establishing liability with respect to the alleged violations of the Fourth and Fourteenth Amendments will be common, proving injury to human dignity and emotional distress with respect to these claims will vary from person to person.  Plaintiff suggests that presumed (or general) damages be determined on a class wide basis and then permit individual class members to prove special damages on an individual basis.  Pl. Mtn at 31. Permitting Plaintiff and class members to receive general damages on a class wide basis and special damages on an individual basis "would unfairly expose defendant[] to

duplicative damage awards, and violate the rule that '[p]resumed damages are a *substitute* for ordinary compensatory damages, not a *supplement* for an award that fully compensates the alleged injury.'" *Amador*, 299 F.R.D. at 634 (quoting *Stachura*, 477 U.S. at 310). In *Amador v. Baca*, the plaintiffs suggested a similar bifurcation of determining liability and general or presumed damages at one stage and then permitting individual class members to seek individual damages at another stage. *See id.* at 634. In denying the motion for class certification, the Court noted that "[t]his flawed proposal reveals the problem inherent in plaintiffs' argument for certification of a damages class." *Id.* That court further explained:

> [i]f the 'presumed damages' uniformly awarded for every [constitutional violation] would be inadequate compensation for the actual injuries suffered by all class members, then individual questions about damages would remain unresolved following resolution of the classwide issues. This confirms that on the issue of damages for the physical and emotional pain and suffering caused by the [constitutional violations], common questions do not in fact predominate over individual questions.

*Id.* Here, Plaintiff has similarly failed to show that individualized damages issues do not predominate over common issues. Plaintiff indicates that *Amador* is distinguishable because it focused on the manner and conditions of an otherwise valid strip search, whereas this case deals with the alleged constitutional violations of the general policy of conducting medical examinations without the appropriate consent or authorization. Reply at 17. However, Plaintiff has indicated that he seeks general or presumed damages for this alleged constitutional violation while "reserving the right of individual Class members to prove their special damages on an individual basis in either this litigation or other litigation." Pl. Mtn at 31. Thus, Plaintiff concedes that not all damages related to the constitutional deprivations alleged in the FAC can adequately be determined on a class wide basis. It follows then, that each individual class member would not be fully compensated solely on the resolution of this proposed class action. For this reason, Plaintiff fails to establish that the proposed class should be certified under Rule 23(b)(3). *Amador*, 299 F.R.D. at 635; *see also See Berndt v. Cal. Dep't of Corr.*, 2012 WL 950625,

at *13 (finding the requirements of 23(b)(3) were not met where plaintiffs recognized the need for individual inquiry as to emotional distress damages and suggested "group or individual summary judgment motions or jury trials").

Further, Plaintiff may not recover damages based solely on the abstract value of a constitutional right. *Stachura*, 477 U.S. at 308. Plaintiff contends that he is not seeking individualized damages because the compensatory damages can be determined by arriving at a dollar amount for the injury to human dignity and emotional distress resulting from the medical examinations. *See* Reply at 16-19. However, this rests on the mistaken assumption that each class member suffered a "standard" injury. Though all children who underwent a medical examination at Polinsky without the appropriate consent or authorization may have suffered the same constitutional violations, the damages at stake likely vary greatly. For example, an infant class member, a five year old class member, and a twelve year old class member are unlikely to be entitled to the same compensation for their physical, mental, and emotional damages. Thus, representative testimony about what it was like to be subjected to a medical examination without the appropriate consent or authorization would not be probative as to the specific experiences of individual class members. "Given the wide array of variables related to damages, the standardized, per diem approach Plaintiff[] suggest[s] would be inappropriate." *See Thomas v. Baca*, No. CV 04-08448 DDP (SHx), 2012 WL 994090, at *2 (C.D. Cal. Mar. 22, 2012) (finding individualized damages predominated common questions and decertifying a damages class where all putative class members suffered the same constitutional violation of sleeping on the floor, but may have suffered different injuries based on the differing circumstances of that same violation), *affirmed by Thomas v. Cnty. of Los Angeles*, Nos. 14-56183, 15-55418, 2017 WL 3049554, at *1 (9th Cir. July 19, 2017) (finding that the district court did not abuse its discretion by decertifying the plaintiff class because it reasonably concluded the putative class failed to meet Rule 23(b)(3)'s commonality requirement "because the damages suffered by individual class

members were insufficiently similar to be established through representative testimony about 'what it was like to sleep on the floors' at the County Jail'").

Regardless of whether presumed damages are applicable to the alleged constitutional violations, individualized damages issues predominate over common questions. If presumed damages are applicable, Plaintiff concedes that the class members' injuries would not be fully compensated because Plaintiff states that the individual members would be permitted to seek individualized damages in addition to the presumed damages award. Further, presumed damages and compensatory damages both must compensate for the injury, which here is dependent upon the individual. Either option requires individualized inquiry which would overwhelm the common damages questions, if any common damages questions exist at all. As a result, the Court finds that Plaintiff has not satisfied Rule 23(b)(3)'s predominance requirement.

## CONCLUSION

Based on the foregoing, while Plaintiff has met the requirements of Rule 23(a), Plaintiff has failed to carry his burden of demonstrating predominance under Rule 23(b)(3). Accordingly, the Court **DENIES** Plaintiff's Motion for Class Certification.

**IT IS SO ORDERED**.

Dated: November 7, 2017

Hon. Michael M. Anello
United States District Judge